**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aloe Vera of America, Inc., et al., | No. CV 99-1794-PHX-JAT |
| Plaintiffs, | **ORDER** |
| vs. | |
| United States of America, | |
| Defendant. | |

## I.    Procedural History

In 2007, this Court granted summary judgment to Defendant. Plaintiffs appealed. This case was argued before the Ninth Circuit Court of Appeals. Following argument, the Court of Appeals issued a limited remand for this Court to make factual findings to determine its jurisdiction to hear the case. Specifically, the Court of Appeals held that based on the case of *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), the statute of limitations governing this case is jurisdictional. Because jurisdiction should be raised at any point the Court's jurisdiction is in question, the Court of Appeals instructed this Court to determine when Plaintiffs discovered the facts giving rise to this lawsuit to determine whether this case is barred by the statute of limitations and therefore beyond this Court's jurisdiction. *Aloe Vera of America, Inc. v. United States*, 580 F.3d 867, 873 (9th Cir. 2009).

## II.    Factual Background

This Court previously summarized the facts of this case as follows:

This case arises from certain disclosures made by the Internal Revenue Service to the Japanese National Tax Administration (NTA). The United States made these disclosures pursuant to a convention with Japan that allows the exchange of information in revenue collection effort. Following these disclosures, stories appeared in the Japanese media regarding the joint examination of Plaintiffs by the IRS and the NTA. The articles about Plaintiffs contained information that was at least partially false.

Plaintiffs argue that the information disclosed by the United States to the NTA was not an "authorized disclosure" under federal law; and, therefore, Plaintiffs are entitled to damages for Defendant's breach of confidentiality. Plaintiffs filed this suit on October 6, 1999. Defendant filed its first Motion to Dismiss in December 1999, claiming lack of subject matter jurisdiction and failure to state a claim. The Court granted the motion to dismiss Plaintiffs' Complaint on statute of limitations grounds with leave to amend, but denied the motion on all other grounds. Specifically, with regard to Count II, the Court found that if the "IRS knew or should have known, based on the alleged prior history of mutual relations with the NTA, that the latter routinely failed to comply with the terms and conditions of secrecy mandated by the Convention, the IRS's disclosure of any return information . . . to the NTA was not authorized by the Convention or by the statute." (Doc. #26)

Plaintiffs filed their First Amended Complaint on October 6, 2000. Defendant filed a motion to dismiss the amended complaint in November of 2000. On June 18, 2001, the Court denied the motion to dismiss, but specifically refrained from ruling on whether Plaintiffs stated a claim "by alleging that false information cannot be pertinent information." (Doc. #65). Plaintiffs have amended their Complaint twice more since the June 18, 2001 Order.

Doc #526 at 1-2.

## III.    Statute of Limitations

The Court of Appeals summarized the applicable statute of limitations as follows:

Aloe Vera sued the government under 26 U.S.C. § 7431(a)(1), which allows a taxpayer to bring a civil action for damages against the government when an officer or employee of the government "knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer" in violation of section 6103. Section 7431(d) provides that any claim for wrongful disclosure of tax return information "may be brought ... at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure."

*Aloe Vera,* 580 F.3d at 870-71.

### A.    Parties' Contentions

Preliminarily, the parties dispute how this Court should interpret the remand order of the Court of Appeals. The first dispute involves whether this Court needs to determine a statute of limitations date for Count I. Defendant argues that it does not dispute this Court's jurisdiction over Count I; therefore, this Court need not take any further action with regard

to Count I.  Defendant further argues that for this Court to take any action on Count I over Defendant's lack of objection would be beyond the terms of the limited mandate.  Plaintiffs argue that regardless of Defendant's position, this Court must still make a statute of limitations finding with regard to Count I.  With respect to Count II, the parties dispute whether the Court of Appeals' use of the plural "dates" in the opinion should be interpreted to mean there are many "disclosures" each giving rise to its own statute of limitations calculation versus whether there is one disclosure date for the entire Count, but the Court of Appeals used the plural "dates" because there are multiple Plaintiffs who might each have learned of the disclosure on a different date.

## B.    Legal Standard

Pursuant to the parties' recommendation (Doc. #562) the Court permitted the parties to file simultaneous motions on the statute of limitations issue.  Plaintiffs moved for partial summary judgment asking this Court to find that their complaint was timely with regard to both Count I and Count II.  Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over Count II.

The Court agrees with Defendant that because this statute of limitations is jurisdictional, this Court should consider this issue under Rule 12(b)(1), if possible.

> A Rule 12(b)(1) jurisdictional attack may be a facial or factual. ... In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. [For example a] jurisdictional challenge was a factual attack where it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings.
> In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal quotations and citations omitted).  The *Safe Air* Court went on to caution, however, that a jurisdictional finding on a genuinely disputed fact is inappropriate when the jurisdictional issue and the substantive issues are so intertwined that the jurisdiction question depends on the resolution of factual issues going to the merits of an action.  *Id*. at 1039-40.  When the facts are

intertwined, the Court should resolve the motion as a motion for summary judgment on the merits of the plaintiff's complaint. *Id.*

As indicated above, in deciding a motion under Rule 12(b)(1), this Court may take evidence and resolve factual disputes. *Robinson v. U.S.*, 586 F.3d 683, 685 (9th Cir. 2009) ("A district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary." (internal quotations omitted)). Additionally, in deciding whether the Court has jurisdiction, the Court of Appeals has directed district courts to take whatever evidence and conduct whatever proceedings the Court deems appropriate. *Valdez v. Allstate*, 372 F.3d 1115, 1118 (9th Cir. 2004). Therefore, although the Court will attempt to resolve this issue as a 12(b)(1) motion, the Court will consider all of the evidence submitted by Plaintiffs with their motion for partial summary judgment in the form it was presented.

The Court agrees with Defendant that the party asserting that this Court has jurisdiction bears the burden of proving jurisdiction. *Kingman Reef Atoll Investments, L.L.C. v. U.S.*, 541 F.3d 1189, 1197 (9th Cir. 2008) ("Although ordinarily the defendant bears the burden of proving an affirmative statute of limitations defense, here the statute of limitations is jurisdictional, and, when subject matter jurisdiction is challenged under Federal Rule of [Civil] Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." (internal quotations omitted)). In this case, Plaintiffs bear the burden of proving that their claims are not barred by this jurisdictional statute of limitations.

With respect to "proving" jurisdiction, the Court notes that, as discussed in the factual background above, in 2000, the Judge to whom this case was previously assigned addressed Defendant's motion to dismiss based on statute of limitations. Doc. #26. In deciding this motion, the Judge concluded that 26 U.S.C. § 7431 was not jurisdictional. *Id.* at 12. This Court declined to reconsider that decision. Doc. #65 at 3. As stated above, the Court of Appeals has determined this statute of limitations is jurisdictional. *Aloe Vera*, 580 F.3d at 872. Presumably as a consequence of determining the statute was not jurisdictional, the prior Judge held Plaintiffs to only a "pleading" standard to show compliance with the statute of limitations, rather than a "proof" standard. Doc. #26 at 9 ("Here ... because Defendant

moved to dismiss and not for summary judgment, the question is not whether Plaintiffs can or have proved the timeliness of their case, but whether the allegation of timeliness in the Complaint is sufficient."). Similarly, this Court required only that Plaintiffs make an "allegation" of the date of discovery in the amended complaint. Doc. #65 at 3.

However, in deciding factual attack jurisdictional motions, "No presumptive truthfulness attaches to plaintiff's allegations." *Robinson*, 586 F.3d at 685; *see also Safe Air*, 373 F.3d at 1039. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson*, 586 F.3d at 685 (*quoting Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007)); *see also Aloe Vera*, 580 F.3d at 872-73.[1] And specifically, "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039 (*quoting Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1036 n. 2 (9th Cir. 2003)). Therefore, Plaintiffs, as the parties asserting jurisdiction, bear the burden of *proving*, not alleging, jurisdiction.

### 1.    Count I

Count I is premised on two allegedly false statements made by Defendant to the NTA. Plaintiffs have called these two allegedly false statements "Commission vs. Price False Statement" and "Unreported Income False Statement." Doc. #570 at 2 n.1. Defendant argues it cannot make a statute of limitations argument with respect to either statement in Count I because Defendant is aware of no evidence in the record that would prove that Plaintiffs learned of these statements more than two years before filing the complaint. *Id.*

---

[1] "[T]he district court relied exclusively on the amended complaint's allegation that Aloe Vera did not discover that the disclosures by the IRS were unauthorized until August 1998. But the determination of jurisdiction requires more. As described above, the proper date from which to measure the timeliness of the complaint under section 7431 is the date when Aloe Vera discovered the respective disclosures, not the date when Aloe Vera discovered that the disclosures were unauthorized. The pleadings alone are inadequate to make this determination." *Aloe Vera*, 580 F.3d at 872-73.

Defendant also argues that no discovery date for statute of limitations purposes can be attributed to the "Commission vs. Price False Statement" because Defendant denies that the statement was ever made. *Id.* Plaintiffs argue that they can prove that they learned of both of these statements within the statute of limitations.

Generally, the Court agrees with Plaintiffs that the Court cannot accept that jurisdiction over Count I is undisputed. The Court reaches this conclusion because the parties cannot stipulate to federal subject matter jurisdiction. Thus, this Court must consider its jurisdiction even if Defendant is not contesting jurisdiction. *Hansen v. Department of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007) (*quoting Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)) ("Although the Government did not contest, and the district court did not address, federal jurisdiction over Hansen's ... claims, 'the defense of lack of subject matter jurisdiction cannot be waived....'").

The Court will consider the two statements that are the subject of Count I separately because Plaintiffs allege a different discovery date for each statement.

### a. Commission vs. Price False Statement

With respect to the "Commission vs. Price False Statement," Plaintiffs claim that Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc. learned of this statement in August 1998, within two years of the October 6, 1999 filing date of the complaint. Doc. #567 at 4. In support of this assertion, Plaintiffs Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc. cite the affidavit of their general counsel, who states, "[The] notes, when received in August 1998, revealed for the first time to Plaintiffs AVA and Maughan that IE Smith told the NTA that the cost of product sold by AVA to FLPJ changed over the years but the commissions paid out to Maughan and Yamagata always stayed the same." Doc. #483-1 at 17, ¶ 18. Thus, these Plaintiffs claim their discovery date is August 1998.

With respect to the remaining Plaintiffs, Gene Yamagata and Yamagata Holdings, Inc., counsel for the other Plaintiffs claims he gave the notes that revealed the statement to counsel for Gene Yamagata and Yamagate Holdings, Inc. after August 1998. Doc. #566 at

6, ¶29. Thus, Gene Yamagata and Yamagate Holdings, Inc. conclude that their discovery date was after August 1998.

Returning to the Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc., Plaintiffs, as indicated above, Defendant asserts that this statement never occurred; therefore, Defendant cannot argue a date from which Plaintiffs learned of the statement. In this Court's summary judgment ruling, the Court found the following regarding the "Commission vs. Price False Statement:"

> The second alleged false statement involves notes from an IRS presentation to the NTA allegedly concerning commissions paid to Maughan and Yamagata on AVA sales of aloe vera products to FLPJ vers[u]s the cost of the products. IE Smith made a presentation to the NTA regarding the commission issue and other issues in August of 1996. Manager Pat Sturgis's notes of the meeting state that the cost of the product to Japan from AVA changed over the years from over $30 to $15, approximately, but the commissions always stayed the same at $8.10. Manager Sturgis testified that her notes regarding the specific statement in question were "poor" and she didn't know whether she understood what Smith was saying. She was taking notes strictly for her own benefit. IE Smith testified that he did not remember making the statement Sturgis attributed to him.
>
> Analyst Sally Warner also took notes at the meeting. Her notes state,"through the years the sales price of the product changed quite a bit. The commission always stayed the same." It is unclear whether this note refers to sales to FLPJ. And the fax transmitting Warner's notes reads, "Attached are the notes that I took during the meeting. As you will be able to see, there are some weak spots and I did miss parts of the second day and the last day." Warner testified that she emphasized recording what the NTA wanted, not what the U.S. representatives were saying.
>
> The evidence shows that from 1985 to 1989 both the cost of the product and the commissions changed, but the commissions did stay the same in 1987, 1988, and 1989, despite changes in cost from 1987 to 1988. [Footnote 2: Costs remained the same in 1988 and 1989.] So, if they describe the cost of sale from AVA to FLPJ, the two sets of notes would be inaccurate except for the years 1987 and 1988. But the Court is not willing to hold the United States liable for intentional falsehoods based on notes taken by two different attendees of a meeting - attendees who admitted to the weakness of their notes.
>
> The Court will not impose liability on the United States for intentional disclosure of false information based on a tax estimate included in the SEP or the presentation notes taken by attendees who both questioned the reliability of their notes. The Court therefore grants summary judgment to Defendant on Count I.

Doc. #526 at 7-8.

Considering this record as a whole, this Court has already concluded that Plaintiffs did not present sufficient evidence to establish a disputed issue of fact that a false statement was actually made. As the Court in *Safe Air* noted, when the resolution of a factual question

going to the merits determines the jurisdictional issue, the Court should not dismiss for lack of jurisdiction, but instead consider the attack to be one on the merits of Plaintiffs' claim. *Safe Air*, 373 F.3d at 1039-40. This claim of this Count falls into this category. In other words, this Court must determine whether there was a false statement to determine when Plaintiffs discovered its existence. Therefore, the Court will not resolve this claim as a statute of limitations issue, but the grant of summary judgment from the prior Order continues to be binding.

Alternatively, if the Court of Appeals disagrees that the factual issues and jurisdictional issues are too intertwined to independently resolve to the jurisdictional question, then this Court finds that the evidence in this record establishes that Plaintiffs Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc. first learned of the alleged "Commission vs. Price False Statement" in August 1998, within two years of filing the October 6, 1999 complaint. Therefore, this claim would not be barred by the statute of limitations.

Conversely, with respect to Gene Yamagata and Yamagata Holdings, Inc., these Plaintiffs offer no evidence of when they first learned of this alleged false statement. The only evidence of record on their discovery is that counsel for the other Plaintiffs avows that he gave them the notes after August 1998. Doc. #568 at 3, ¶10 citing only Doc. #566 at 6, ¶29. In other words, Gene Yamagata and Yamagata Holdings, Inc. never claim that receipt of the notes from the other Plaintiffs' counsel "after" August 1998 is the <u>first</u> time they learned of the alleged false statement.[2] Accordingly, Gene Yamagata and Yamagata

---

[2] At oral argument, counsel for Gene Yamagata and Yamagata Holdings, Inc. argued that these Plaintiffs through counsel did not discover these dates until after August of 1998. Obviously arguments of counsel are not evidence on which this Court can rely to find a fact. Moreover, the first time counsel learned of something, and the first time counsel communicated it to his client does not necessarily mean it is the first time the client learned of it for statute of limitations purposes. In other words, knowledge of counsel is knowledge of the client for purposes of starting the statute of limitations running; but counsel gaining this knowledge on a particular date does not preclude the possibility the client gained the knowledge earlier.

Holdings, Inc. have failed to meet their burden to establish when they first learned of this alleged false statement, which allegedly occurred in August of 1996 (over three years before the Complaint was filed). As a result, their claim on this alleged false statement is barred by the statute of limitations, and will be dismissed for lack of jurisdiction.

### b. "Unreported Income False Statement"

All Plaintiffs assert that they learned of the "Unreported Income False Statement" in September 2001, approximately two years after the complaint was filed. Doc. #566 at 6, ¶31. Specifically, Plaintiffs claim that this statement was contained in the "Simultaneous Examination Proposal" dated April 26, 1996. Doc. #568 at 3, ¶¶12-13. Counsel for Plaintiffs Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc. avowed that all of the Plaintiffs (including Gene Yamagata and Yamagata Holdings, Inc.) learned of this statement for the first time through discovery in this case. Doc. #566 at 6, ¶31.

As stated above, Defendant does not dispute this allegation. Based on this record, the Court finds that Plaintiffs discovered the factual basis for the "Unreported Income False Statement" in September 2001. Thus, the Court assumes that the December 17, 2001 second amended complaint, and the February 14, 2005 third amended complaint were, in part, to conform to this newly discovered evidence. Accordingly, the "Unreported Income False Statement" in Count I is not barred by the statute of limitations.

### 2. Count II

As indicated above, the parties dispute how this Court should interpret the Court of Appeals remand with respect to Count II. In Count II, Plaintiffs claim that Defendant's disclosure of return information to the NTA was not an "authorized disclosure" because Defendant knew or should have known the NTA was not a secure recipient.

Defendant argues that one date begins the running of the statute of limitations on Count II. More particularly Defendant argues that as soon as each Plaintiff knew of the simultaneous exam, that particular Plaintiff knew of the disclosure to the NTA, and that date of knowledge is the date that starts the statute of limitations for each Plaintiff.

Plaintiffs argue that the fact that the Court of Appeals used a plural "dates" in its decision means that this Court should determine the date of each disclosure. Doc. #574 at. Thus, Plaintiffs conclude that, "every factual assertion by the IRS [to] the NTA constitutes a separate disclosure of return information (literally hundreds of individual items concerning Mr. Maughan, AVA, and Mr. Yamagata), as defined in section 6103(b)(2)." Doc. #577 at 7. Defendant counters that the Court of Appeals used the plural designation only because there are multiple Plaintiffs who may have different discovery dates. Doc. #570 at 3. Thus, Defendant concludes that "dates" only directs this Court to find one discovery date for each Plaintiff. Defendant offers three specific dates on which it contends Plaintiffs knew or should have known of a disclosure; each of these dates would cause Count II to be barred by the statute of limitations. *Id*. at 4.

### a.    Meaning of "dates"

Defendant points to two specific instances in the Court of Appeals opinion which suggest that only one date begins the running of the statute of limitations with respect to Count II. Doc. #570 at 3. Defendant quotes the opinion of the Court of Appeals as follows, "the **date** of discovery of the supposedly improper disclosure, not the **date** when the plaintiff realizes that a disclosure was unauthorized," *Aloe Vera*, 580 F.3d at 872, and "The district court did not make findings of fact as to **whether** Aloe Vera knew, more than two years before it filed the complaint, **that** the IRS had disclosed information to the NTA," *id.* (emphasis added by Defendant).

Conversely, Plaintiffs point to three instances where the Court of Appeals used a plural designation to show that the Court intended each disclosure to have its own discovery date. Doc. #574 at 2. Plaintiffs quote the opinion of the Court of Appeals as follows, "make findings of fact regarding the **dates** on which Aloe Vera discovered the respective **disclosures** underlying each of Aloe Vera's claims. ... With respect to Count II, the district court shall make findings of fact regarding the **dates** on which Aloe Vera discovered that the IRS had disclosed information to the NTA." *Aloe Vera*, 580 F.3d at 873 (emphasis added by Plaintiffs). The Court notes that the uses of the plural form of dates and disclosures in the

first quoted sentence could merely reflect that there are two Counts (the Plaintiffs used an ellipsis to represent the Court of Appeals's discussion of Count I). Therefore, the Court will focus only on the plural uses of dates specific to Count II.

Based on the above quotes, the Court agrees with Defendant that the language "The district court did not make findings of fact as to **whether** Aloe Vera knew, more than two years before it filed the complaint, **that** the IRS had disclosed information to the NTA," implies that this Court is to locate one date on which Plaintiffs knew any information had been disclosed to the NTA. Conversely, the Court agrees with Plaintiffs that the language, "With respect to Count II, the district court shall make findings of fact regarding the **dates** on which Aloe Vera discovered that the IRS had disclosed information to the NTA," implies that this Court is to locate multiple disclosure dates. While Defendant's argument that dates is plural because there are multiple Plaintiffs is not impossible, the Court of Appeals could easily have crafted that sentence to say exactly what Defendant argues. Because these two directives seem to be in conflict, this Court cannot definitely conclude which analysis the Court of Appeals mandated.

Thus, the Court will consider the statute itself and other cases decided under the statute. Courts have treated multiple disclosures to a single recipient as having one disclosure date for statute of limitations purposes, but multiple disclosures to multiple recipients as having multiple disclosure dates for statute of limitations purposes. *Compare McQueen v. U.S.*, 264 F.Supp.2d 502, 510 (S.D. Tex. 2003) (*aff'd* 400 Fed.Appx. 964 (5th Cir. 2004)) (applying the § 7431(d) statute of limitations to a § 6103 disclosure of return information claim and treating multiple disclosures on multiple occasions to a single recipient as a single disclosure for statute of limitations purposes); *with Chisum v. U.S.*, 1991 WL 322976,*2 (D. Ariz. 1991) (applying the § 7431(d) statute of limitations to a § 6103 disclosure of return information claim and treating three disclosure into the public record (county recorder's office, mailing notices of bids, publishing notices of bids) as three separate disclosures); *William E. Schrambling Accountancy Corp. v. U.S.*, 689 F.Supp. 1001, 1005-06 (N.D. Cal. 1988) (*overruled on other grounds William E. Schrambling Accountancy*

*Corp. v. U.S.*, 937 F.2d 1485 (9th Cir. 1991)) (applying the § 7431(d) statute of limitations to a § 6103 disclosure of return information claim and treating multiple disclosures in the form of levies to multiple banks as separate disclosures).

Outside of the statute of limitations context, the Ninth Circuit Court of Appeals has held that a single disclosure to approximately 100 people was "one" disclosure. *Siddiqui v. United States*, 359 F.3d 1200, 1202-03 (9th Cir. 2006).[3]  In distinguishing a Fourth Circuit Court of Appeals decision, the Ninth Circuit Court of Appeals noted that in its case, the speaker made only one statement, thus it was one act, versus the Fourth Circuit case where the revenue agent engaged in two acts (mailing a single letter but listing two recipients on the mailing label was the equivalent of mailing two letters).  *Id*. at 1203 (*distinguishing Mallas v. United States*, 993 F.2d 1111, 1125 (4th Cir. 1993)).

In this case, all Plaintiffs have admitted that in late 1996 they knew that some return information had been disclosed to the NTA.  Doc. #565 at 8-9 (*quoting* Third Amended Complaint ¶ 24).  Thus, if Defendant is correct that Count II should be treated as one disclosure, with one date on which Plaintiffs knew of the disclosure, Count II is barred by the statute of limitations.

Conversely, Defendant does not dispute Plaintiffs' assertion that throughout the course of the simultaneous exam, many individual disclosures were made to the NTA.  In other words, Defendant does not argue that every piece of return information was disclosed the first time Defendant exchanged information with the NTA.  Thus, accepting Plaintiffs' argument that this Court is to find dates for "literally hundreds of individual items" then Count II is really over 100 individual counts.  Considering the most closely analogous case the Court has located, *McQueen*, 264 F.Supp.2d at 510, the Court agrees with Defendant that even though multiple "acts" occurred that each represented the disclosure of a piece of return

---

[3]  The Eighth Circuit Court of Appeals disagrees.  *Snider v. U.S.*, 468 F.3d 500, 508-09 (8th Cir. 2006).

- 12 -

information, because all disclosures were made to one recipient, there is just one date that is applicable to this disclosure.

The *McQueen* court reached this result in part because of how it interpreted the "knowledge" requirement of the plaintiff. Specifically, the *McQueen* Court held that the statute of limitations begins to run from when the plaintiff "knew" or "should have known" of the disclosure in violation of § 6103. *Id.* at 509. McQueen raised very similar arguments to Plaintiffs in this case. Specifically, McQueen argued that he timely filed his action within the two year limitation of 26 U.S.C. § 7431(d) because he did not have "actual knowledge of the alleged disclosure violation until November 8, 1999, when he claims to have discovered such in a memorandum produced by the FBI in response to McQueen's FOIA inquiries." *Id.* The Court held, "The date of discovery, under § 7431(d), is when one knows or should have known of the claim." *Id.* at 509-10 (collecting cases).[4]

In this case, Defendant offers three separate events, all of which would cause Count II to be barred by the statute of limitations, which put Plaintiffs on notice that disclosures were occurring from the United States to the NTA. Specifically, Defendant notes that all

---

[4]    *See Wood v. Commonwealth of Va.*, 155 F.3d 564, 1998 WL 414019, *2, 1998 U.S.App. LEXIS 16904, *7 (4th Cir. July 23, 1998) (action accrued when the plaintiff learned of possibility of wrongful disclosure); *Amcor Capital Corp. v. U.S.*, No. CV 94-6814(GHKx), 1995 WL 515690, *2 (C.D. Cal. June 13, 1995), *aff'd on other grounds*, 106 F.3d 406, 1997 WL 22248 (9th Cir. 1997) (Under section 7431(d), the limitations period, "begins to run from the date upon which the plaintiff knows or should have known of the subject injury."); *cf. J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1253 (1st Cir. 1996) (applying objective "know or should have known" standard to term "discovery" in ERISA statute of limitations, 29 U.S.C. § 1113); *Tregenza v. Great Am. Communications, Co.*, 12 F.3d 717, 722 (7th Cir. 1993) (interpreting "discovery" rule in Section 9(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(e), to include inquiry or constructive notice).

*McQueen*, 264 F.Supp.2d at 509-10.

Plaintiffs were given notice of the simultaneous examination in August 1996. Doc. #565 at 7. Next, Defendant notes that Plaintiffs admitted in their third amended complaint that they all knew in late 1996 that the United States had disclosed particular return information to the NTA. Doc. #565 at 8-9. Finally, Defendant notes that Plaintiffs were issued and received correction notices in January 1997 from Japan based on information Plaintiffs knew came from the United States as part of the simultaneous examination. Doc. #565 at 9-10.

Plaintiffs do not dispute Defendant's argument with respect to the first two dates. For example, Plaintiffs acknowledge that they knew of the simultaneous exam in 1996 and that they generally knew that a simultaneous exam would result in return information disclosure by Defendant; but Plaintiffs argue that they did not know on an item by item basis what was disclosed at this time. Doc. #574 at 4-5. Similarly, with regard to the second date, Plaintiffs acknowledge that with respect to that one particular piece of information (commissions paid by Aloe Vera America to Rex Maughan and Gene Yamagata on Aloe Vera America sales to Forever Living Products Japan), Plaintiffs are barred by the statute of limitations; but Plaintiffs argue that this one bar does not bar their claims in Count II as to the "numerous" other disclosures by Defendant. Doc. #574 at 5. Plaintiffs completely dispute the third date, arguing that they believed that the correction notices from Japan were based on additional documentation Plaintiffs provided, not the result of documents provided by Defendant. Doc. #574 at 6-7.

Using either of the first two dates advanced by Defendant as the date on which Plaintiffs knew or should have known that disclosures were made to Japan, Count II of Plaintiffs' October 6, 1999 complaint is barred by the statute of limitations. This Court agrees with the *McQueen* court that § 7431(d)'s statute of limitations requires that the party knew or should have known of the disclosure.[5] This is consistent with the Court of Appeals

---

[5] The Court notes that the Judge to whom this case was originally assigned who conducted the statute of limitations analysis concluded that § 7431(d) was not a known or should have known standard. Doc. #26 at 10, n. 7 (holding, "The statute applicable here, 26 U.S.C. § 7431(d), establishes the two year statute of limitations from the time the plaintiff

- 14 -

guidance that the relevant date is the date Plaintiffs discovered the disclosure, not the date Plaintiffs knew the disclosure was unauthorized. *Aloe Vera*, 580 F.3d at 872. In other words, inquiry notice runs from when a party should know a disclosure had been made.

To hold otherwise would mean that the IRS giving a party notice of a simultaneous examination with another country puts that party on notice of absolutely nothing. For example, in this case Plaintiffs' argument is that they could have potentially waited 50 years to file this lawsuit if 50 years from now they filed a FOIA request and discovered that one particular document was disclosed to the NTA as part of the simultaneous examination, but it was not until that FOIA request that they knew, for certain, that particular document was disclosed. As the *McQueen* court noted in interpreting the two-year statute of limitations in § 7431(d), "As with all waivers of sovereign immunity, conditions on the waiver - such as a statute of limitations - must be construed strictly in favor of the sovereign." 264 F.Supp.2d at 509 (*citing Block v. North Dakota*, 461 U.S. 273, 287 (1983)). Further, as the Court of Appeals noted in this case, a jurisdictional statute of limitations such as § 7431(d), "seeks not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as limiting the scope of a governmental waiver of sovereign

---

'discovers' the unauthorized disclosure, rather than from [the] time the plaintiff 'should have known' of the injury"). This Court has reviewed the mandate of the Court of Appeals and does not see that this conclusion was expressly accepted or rejected.

The Court notes that the Court of Appeals stated, "With respect to Count II, the district court shall make findings of fact regarding the dates on which Aloe Vera **discovered** that the IRS has disclosed return information to the NTA." *Aloe Vera*, 580 F.3d at 873 (emphasis added). This Court has interpreted "discovered" to include actual discovery or inquiry notice. Additionally, the Court notes that the Court of Appeals stated, "The district court did not make findings of fact as to whether Aloe Vera **knew**, more than two years before it filed the complaint, that the IRS had disclosed information to the NTA." *Id*. at 872 (emphasis added). The Court interprets this use of "knew" to encompass "should have known" because of the context of the sentence. Specifically, at this point in the opinion, the Court of Appeals does not seem to anticipate that Plaintiffs would argue that they "knew" there must be some disclosures, but they did not know the specific disclosures. Therefore, the Court of Appeals was not addressing whether general "knowledge" of disclosures would put Plaintiffs on inquiry notice of specific disclosures.

- 15 -

immunity." *Aloe Vera*, 580 F.3d at 871 (quotations and citations omitted). Plaintiffs' argument that they have no inquiry notice, leaving the sovereign with virtually unlimited future potential liability, is inconsistent with these policies of statutory construction.

Thus, the Court finds that there is only one "date" for this Court to make a finding of fact on with respect to each Plaintiff's "discovery" that Defendant had made disclosures to Japan. The Court need only find one date with respect to each Plaintiff because "discovery" includes both "knew" of the disclosures, and "should have known" of the disclosures. In this case, all Plaintiffs admit that they "knew" of the simultaneous examination in August 1996. The Court finds that as of August 1996 they "should have known" Defendant was making disclosures of return information to Japan. Thus, statute of limitations as to all of Count II began running in August 1996. Therefore, as to Count II, the Complaint filed on October 6, 1999 is barred by the statute of limitations.[6]

### b.     Hundreds of Disclosures

Alternatively, the Court will consider, assuming the Court is in error and Count II should be treated as hundreds of individual disclosures for which "discovery" includes only "actual knowledge" of a disclosure, whether any of Plaintiffs' claims in Count II are within the statute of limitations. At this point, it was the Court's intention to list each disclosure one by one, when Defendant made the disclosure, and the date each Plaintiff (one by one) claimed to have learned of the disclosure. However, although they argue that this Court should treat each disclosure as its own cause of action, with its own statute of limitations, Plaintiffs never actually list all of the disclosures they claim Defendant made to the NTA.

Instead, Plaintiff list three "primary" instances of IRS disclosures to the NTA. Doc. #567 at 6. The Court does not know what Plaintiffs mean by "primary." More importantly, two of the three "events" listed are not actually a disclosure of return information.

---

[6] For clarity, the Court's conclusion that discovery includes "should have know" does not change the Court's analysis with respect to Count I because the Court does not find that knowledge of the simultaneous examination means the Plaintiffs "should have known" Defendant would disclose (allegedly) false information.

Specifically, Plaintiffs list, "(1) the April 1996 [Simultaneous Exam Proposal], (2) the August 1996 IRA/NTA meeting in Phoenix, and (3) the November 1996 IRA/NTA meeting in Tokyo." Doc. #567 at 6.

Turning to the two meetings first, the Court does not find these to be "disclosures" of return information. First, Plaintiffs never list, item by item, what was disclosed in these meetings. And, it would not be surprising for the participants to have done most, if not all, of their "disclosing" prior to the meeting so they could review the information in advance of the meeting. Second, even if the Court could glean from somewhere in this record every item "disclosed" by Defendant at these meetings, Plaintiffs have only avowed when they learned of the "meetings" not when they first learned of the disclosure of whatever items were discussed at the meetings.

For example, Plaintiffs Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc.'s counsel avows, "The August 1998 FOIA Release was the first time that Plaintiffs or their counsel became aware of the August 1996 and November 1996 IRS-NTA meetings or acquired knowledge of the content of the meetings." Doc. #566 at 6, ¶ 28. Thus, counsel has avowed that August 1998 is the first time he learned of the 1996 meetings and he learned what was discussed at the 1996 meetings; but hypothetically, if say Aloe Vera of America, Inc.'s 1992 U.S. income tax return was disclosed at one of these 1996 meetings, counsel never avows that August 1998 is when he learned for the first time that Aloe Vera of America, Inc.'s 1992 U.S. income tax return was disclosed to the NTA. And, as discussed above, the Court must discuss this issue "hypothetically" because Plaintiffs never actually list what specific, item by item, disclosures they claim occurred at these meetings. Indeed, although Plaintiffs claim there were "literally hundreds" of disclosures, counsel's affidavit lists only two categories for all of the 1996 meetings. Doc. #566 at 6. The Yamagata Plaintiffs are even more deficient, in that they

avow nothing about when they learned of even the meetings, much less an item by item list of what was disclosed.[7]

In other words, the date that Plaintiffs learned there was a meeting or what was discussed at the meeting is certainly not the first time they learned that some items had been exchanged between Defendant and Japan.[8] And, it may well not have been the first time Plaintiff learned of the disclosure by Defendant of specific items discussed at the meeting. But Plaintiffs never list what was discussed/disclosed at the meeting, nor avow that it was the first they had each learned of that particular disclosure; therefore, Plaintiffs have failed to meet their burden of showing that their learning of the meetings was the first time they learned of the disclosures within the meetings. Further, as discussed above, because all Plaintiffs concede that they knew of the simultaneous exam in August 1996, Plaintiffs have failed to establish that they learned of whatever individual disclosures they intend to encompass in these meetings for the first time less than two years before filing the complaint.

---

[7] Counsel for the other Plaintiffs' supplemental affidavit about when the Yamagata Plaintiffs received certain documents "to the best of his knowledge" still does not cure the fact that the Yamagata Plaintiffs never affirmatively state when they knew of any of the disclosures. *See* Doc. #576 at 3, ¶ 13.

[8] The supplemental affidavit of Plaintiffs counsel confirms this point, avowing, "To the best of my knowledge, the August 1998 FOIA releases were the first time that the IRS advised, told, informed or communicated to Plaintiffs Rex Maughan and [Aloe Vera American, Inc.] that documents or information had been disclosed to the NTA (**other than the limited return information implicit in the simultaneous examination notices of August 15, 1996**)." Doc. #576 at 3, ¶ 12 (emphasis added). It is the Plaintiffs burden to establish that they DID NOT have notice of the various disclosures more than two years before filing the complaint. Yet, in this sentence they admit they had actual knowledge of the "return information implicit in the simultaneous examination notices of August 15, 1996." *Id*. The Court cannot identify what return information Plaintiffs claim is "implicit" with the notice; therefore, the Court concludes Plaintiffs have failed to meet their burden as to any disclosures, since they concede they have not meet their burden with some to some disclosures. Additionally, this avowal does not change the Court's analysis as to whether Plaintiffs have met their burden. Specifically, counsel avowing that, to his knowledge, it is the first time "the IRS" disclosed the information to Plaintiffs is not the same as avowing it is the first time Plaintiffs (or any of them) actually learned the information from any source.

With respect to the simultaneous exam proposal,[9] Plaintiffs Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc.'s counsel avows that "the taxpayers"[10] did not "receive" the simultaneous exam proposal until September 2001. Doc. #566 at 6, ¶ 31. Again, the avowal suffers from the same deficiency of proof as the other avowals. Specifically, it is undisputed that all Plaintiffs knew of the simultaneous exam in August 1996; thus, the avowal cannot mean that every item contained in the document was learned of for the first time in 2001. Further, although the Court has read the simultaneous exam proposal, the Court does not know which specific items Plaintiffs claim are "return information."[11] Finally, again the fact that "the taxpayers" first learned of this specific document in 2001, is not proof that they first learned of the disclosure of each item disclosed in the document in 2001. As stated above, for this Court to treat the "literally hundreds" of disclosures individually, the Court must have proof of the date of discovery of each disclosure. This avowal fails to meet this standard of proof.

Finally, as the Court indicated above, Plaintiffs refer to these two meetings and the simultaneous exam proposal as the three "primary" disclosures. Presumably, Plaintiffs attempt to leave themselves the ability to argue later if some particular item was not disclosed at one of these three times, when they learned of that disclosure. Unfortunately for Plaintiffs, there is no later. This was their opportunity to prove when they learned of each individual disclosure. Accordingly, with respect to whatever unidentified disclosures Plaintiffs would

---

[9] Doc. #483-2 at 6-12.

[10] The Court does not see the term "the taxpayers" defined in the affidavit; therefore, it is not clear to whom this avowal applies.

[11] For example, the simultaneous exam proposal says, "From his headquarters in Phoenix, Arizona, Mr. Rex. G. Maughan owns and controls several entities that grow aloe vera plants, process the plants, manufacture various products using the processed plants, and sell the products throughout the world." Doc. #483-2 at 8. The Court is unclear whether Plaintiffs would argue that this is confidential return information, and, if yes, that each clause would be an independent disclosure.

claim fall outside these three "primary" disclosures, Plaintiffs failed to meet their burden of proving that they learned of these disclosures within the statute of limitations.

Therefore, even if this Court attempts to apply the mandate as Plaintiffs argue it should be applied, the Court finds Plaintiffs have failed to establish each of their discovery dates for any of the "literally hundreds" of individual disclosures that make up Count II. Accordingly, under this alternative theory, the Court continues to find Court II to be barred by the statute of limitations.

The Court considered whether the it should order either supplemental briefing or an evidentiary hearing on the "literally hundreds" of disclosures argued by Plaintiff. *Valdez* suggests taking such additional evidence would be within the Court's discretion in determining its jurisdiction. 372 F.3d at 1118. But Plaintiffs moved for summary judgment, and surely knew that the burden on summary judgment would be theirs. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, Defendant noted that proving jurisdiction was Plaintiffs' burden, and Plaintiff did not dispute this law. Doc. #575 at 5. Knowing that they had the burden, Plaintiffs still failed to ever list, one by one, the disclosures that Defendant allegedly made, when Defendant made the disclosure, or when Plaintiffs (one by one) learned that Defendant had made each disclosure. This Court relies on the guidance of *Pliler v. Ford*, 542 U.S. 225, 231 (2004), that it is inappropriate for this Court to give a party advice (because advice undermines the district judge's role as an impartial decision maker). And the Court cannot see how telling Plaintiffs exactly what to do in terms of supplemental briefing or at an evidentiary hearing could be anything other than advice. The Court gave the parties the exact briefing on remand that they requested (Doc. #562); and Plaintiffs filed motions, responses, replies and exhibits totaling 77 pages. Plaintiffs knew their argument was that this Court was to treat Count II as "literally hundreds" of individual claims, yet Plaintiffs choose to never tell the Court (much less prove to the Court) what those hundreds

of disclosures were nor when Plaintiffs learned of them.[12] Thus, Plaintiffs failed to meet their burden of proving which of their alleged "hundreds" of claims would not be barred by the statute of limitations. The Court will not give them yet another opportunity to do so.[13]

**IV.    Conclusion**

For the reasons stated above,

**IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Doc. #567) (seeking to have this Court find that all claims are not barred by the statute of limitations) is granted in part and denying in part as follows:

As to Count I, "Commission vs. Price False Statement" and Plaintiffs Aloe Vera of America, Inc., Rex G. Maughan, Ruth G. Maughan, and Maughan Holdings, Inc., the motion is granted;

As to Count I, "Commission vs. Price False Statement" and Plaintiffs Gene Yamagata and Yamagata Holdings, Inc. the motion is denied;

---

[12]   Indeed, Defendant succinctly points out what Plaintiffs were required to do to sustain their burden on their theory of Count II, "plaintiffs have to: (1) detail each act of unauthorized disclosure — i.e., a disclosure from the United States to the NTA that the NTA subsequently leaked — and (2) then establish when they learned of that disclosure to the NTA and that it was less than two years before bringing suit." Doc. #575 at 5. Defendant is correct that Plaintiffs never made any showing of what information was disclosed by the IRS on an item by item basis. An obvious consequence of this failure being that Defendant could never offer evidence to dispute each Plaintiff's claimed date of discovery of each claimed disclosure. The Court reaches this conclusion without deciding whether Defendant is correct that Plaintiffs must also show that each disclosed item was subsequently leaked by the NTA.

[13]   This conclusion is further supported by the fact that, prior to the appeal, Defendant twice moved to dismiss on statute of limitations grounds. Plaintiffs were given the full opportunity to brief the statute of limitations issue in response to both of those motions. And, while the Court of Appeals is certainly correct that this Court never made specific factual findings regarding the statute of limitations issue, this Court should have been able to make those findings from the records on the motions to dismiss. Instead, however, the Court gave Plaintiffs a third (motion for partial summary judgment) and fourth (response to Defendant's third motion to dismiss) opportunity to brief this issue. Ordering a fifth round of briefing to attempt to allow Plaintiffs to prove jurisdiction would run afoul of *Pliler*, 542 U.S. at 231.

As to Count I, "Unreported Income False Statement" the motion is granted;

As to Count II, the motion is denied.

**IT IS FURTHER ORDERED** that as to Count I "Commission vs. Price False Statement" and Plaintiffs Gene Yamagata and Yamagata Holdings, Inc. the Court sua sponte dismisses this claim of these Plaintiffs because it is barred by the statute of limitations.

**IT IS FURTHER ORDERED** that Defendant's motion is dismiss Count II (Doc. #565) is granted because Count II is barred by the statute of limitations.

**IT FURTHER ORDERED** that as to the claims that the Court found were not barred by the statute of limitations, judgment is still granted in favor of Defendant for the reasons stated in this Court's Order of February 2, 2007 (Doc. #526).

**IT IS FINALLY ORDERED** that, consistent with the limited mandate in this case, and this Court having decided the issues raised in the limited mandate, the Clerk of the Court shall send a copy of this Order to the Court of Appeals and shall close this case (and to the extent a further judgment of this Court is required, this Order shall also serve as the judgment on the statute of limitations issue).

DATED this 2nd day of August, 2010.

James A. Teilborg
United States District Judge